JUNTA DE PLANIFICACIÓN DE PUERTO RICO, recurrente y peticionaria, *v.* JUNTA DE APELACIONES SOBRE CONSTRUCCIONES Y LOTIFICACIONES, recurrida.

*Número:* O-78-347      *Resuelto:* 15 de noviembre de 1979

*Efrén B. Lugo Pérez, Emilio Vidal Pérez Rosado, Benjamín Soto Maldonado, Raúl Guemara Nieves y Rafael Concepción Landrón,* abogados de la peticionaria; *Carmen M. Quiñones Núñez* y *Gregui J. Mercado Escobar,* abogados de la recurrida; *Carlos E. Berríos Rojas,* abogado de José N. Colón.

EL JUEZ ASOCIADO SEÑOR TORRES RIGUAL emitió la opinión del Tribunal.

▮ Este caso pone de manifiesto la situación que confrontan algunos ciudadanos al acudir a agencias administrativas en el trámite de asuntos que se prolongan innecesariamente por tecnicismos que pueden evitarse mediante una plena y cabal consideración de todas las alternativas bajo ley. La esencia del trámite administrativo es su flexibilidad y no debe recargarse con el rigor formalista que en el pasado caracterizó los procedimientos judiciales. Esta norma tiene mayor justificación cuando se trata, como en este caso, de un sencillo trámite de segregación simple en que la agencia tuvo ante sí los hechos pertinentes para hacer la determinación sobre su procedencia y no lo hizo.

La Administración de Reglamentos y Permisos (A.R.P.E.) desaprobó la segregación de un lote de 945 metros cuadrados de una finca de alrededor de 41 cuerdas ubicada en el Barrio Honduras de Barranquitas por el fundamento de que dicha finca radicaba en un distrito R-O(25) donde la cabida mínima para la creación de nuevas fincas es de 25 cuerdas. Dicho distrito fue creado mediante enmiendas a los mapas de zonificación con el propósito de mantener en su estado

natural el área que se identifica con el nombre de "Cañón de San Cristóbal" dentro de los límites territoriales de los municipios de Aibonito y Barranquitas. A instancia del interesado José N. Colón la Junta de Apelaciones Sobre Construcciones y Lotificaciones revocó la desaprobación de A.R.P.E., y, considerando las circunstancias especiales que concurrían en el caso, autorizó la segregación solicitada dentro de la facultad discrecional conferida por el Art. 31(c) de la Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. sec. 72(c). Específicamente la Junta de Apelaciones tomó en consideración que el lote a segregarse formaba parte de un sector donde ya existía un desarrollo urbano lejano al área propia del Cañón de San Cristóbal por lo que no habría de afectar sustancialmente las características esenciales del área. También consideró como circunstancia especial que el lote en cuestión estaba segregado de hecho sobre el terreno, tenía acceso por una carretera municipal, contaba con las facilidades públicas esenciales y estaba conforme a las disposiciones del Reglamento para Lotificaciones Simples habiendo sido endosada la segregación por el Municipio de Barranquitas.

■ La Junta de Planificación como parte afectada por la resolución de la Junta de Apelaciones—el Art. 31(e), Ley Núm. 76 de 24 de junio de 1975, *supra*, sec. 72(c)(e), (¹) expresamente reconoce la capacidad de la Junta de Planificación para impugnar las resoluciones de la Junta de Apelaciones, aunque aquélla no es parte en los procedimientos originales—

---

(¹)El Art. 31(e) provee en lo pertinente:

"(e) La Junta de Planificación, la Administración de Reglamentos y Permisos, o cualquier parte interesada o afectada por una actuación o resolución de la Junta de Apelaciones en relación con la cual una petición de reconsideración hubiere sido formulada y denegada, podrá establecer recurso de revisión ante el Tribunal Superior de Puerto Rico, Sala de San Juan o en la Sala cuya jurisdicción comprenda el lugar donde esté ubicado el proyecto, dentro del término de treinta (30) días contados a partir de la fecha del depósito en el correo de la notificación de la denegatoria de la solicitud de reconsideración."

solicitó revisión al Tribunal Superior, Sala de San Juan en la que señaló como error que la Junta de Apelaciones había otorgado una variación en primera instancia contraria a la ley y a lo resuelto en *Quevedo Segarra* v. *J.A.C.L.*, 102 D.P.R. 87 (1974). El tribunal de instancia confirmó la resolución de la Junta de Apelaciones al concluir que el lenguaje del estatuto bajo el cual se decidió *Quevedo Segarra* había sido variado por la nueva Ley Orgánica de la Administración de Reglamentos y Permisos, *supra.*

No conforme la Junta de Planificación instó el presente recurso solicitando la revocación de la sentencia dictada por el tribunal de instancia confirmando la resolución de la Junta de Apelaciones.

En *Quevedo Segarra* resolvimos que la función de la Junta de Apelaciones era exclusivamente de revisión y que correspondía a la Junta de Planificación la jurisdicción para entender en primera instancia en la concesión de variaciones y autorización de excepciones a los reglamentos de planificación. Esta conclusión se fundó no sólo en el texto específico y en el historial de la entonces vigente Ley de Planificación y Presupuesto, Art. 26, 23 L.P.R.A. sec. 28, sino, además, en la naturaleza y alcance de estos conceptos dentro del régimen establecido para controlar y dirigir el desarrollo urbano en forma integral con un mínimo de fricción y conflicto.

En virtud de la nueva Ley Orgánica de la Administración de Reglamentos y Permisos, Ley Núm. 76 de 24 de junio de 1975, 23 L.P.R.A. sec. 71, se adoptó un nuevo esquema administrativo mediante el cual se transfirió a A.R.P.E. las funciones operacionales que hasta entonces desempeñaba la Junta de Planificación y se confirió a este nuevo organismo la facultad de aplicar y velar por el cumplimiento de las leyes y reglamentos de planificación. La Junta de Planificación quedó restructurada por una nueva ley orgánica que la liberó de esas funciones operacionales y, por otro lado, fortaleció sus funciones de integrar y coordinar la formulación e implementación de la política pública sobre

el desarrollo físico, económico y social de Puerto Rico. Véase Ley Núm. 75 de 24 de junio de 1975, 23 L.P.R.A. secs. 62–63j.

A poco que se examine el nuevo texto del Art. 31, inciso (c) de la Ley Orgánica de la Administración de Reglamentos y Permisos y su historial legislativo y se compare con el texto derogado del Art. 26 que sirvió de base a lo resuelto en *Quevedo Segarra,* se notará que la conclusión del tribunal de instancia al efecto de que la nueva ley revocó dicha decisión es a todas luces errónea.

El nuevo esquema administrativo preservó la función exclusivamente revisora de la Junta de Apelaciones en términos que para todo fin práctico son idénticos a los de la ley derogada según veremos a continuación.

El Art. 31 de la nueva Ley Orgánica de Reglamentación y Permisos, *supra,* define las facultades y deberes de la Junta de Apelación, en los siguientes términos:

"(a) . . . . . . . .

(b) . . . . . . . .

(c) La Junta de Apelaciones celebrará una vista con notificación previa, a la Junta de Planificación, la Administración y a las partes interesadas o afectadas, según aparezcan de su expediente, *en la cual podrá recibir toda la prueba que resulte necesaria para adjudicar casos* y deberá dictar su resolución dentro de los treinta (30) días siguientes a dicha vista. Deberá notificar su resolución a las partes interesadas, con copia a la Administración de Reglamentos y Permisos y a la Junta de Planificación.

La Junta de Apelaciones podrá decretar a nivel apelativo cualquier orden, requerimiento, resolución o determinación que a su juicio deba dictarse: (1) por motivo de perjuicios ocasionados por circunstancias especiales o extraordinarias cuando la actuación o resolución de la cual se apela resulta en una prohibición o restricción irrazonable del derecho del apelante al uso y disfrute de su propiedad; (2) por denegaciones viciosas para emitir los permisos necesarios o; (3) por cualesquiera otras razones autorizadas en los reglamentos de la Junta de Planificación de Puerto Rico y de la Administración de Reglamentos y Permisos adoptados o aprobados a virtud de las secs. 62 a 63j de este título, este Capítulo o cualquiera otra ley, y, a tal fin, la Junta de Apelaciones tendrá los mismos

poderes del funcionario u organismo de cuya actuación se apela, remitiendo copia de su determinación a la Junta de Planificación y a la Administración de Reglamentos y Permisos." (Énfasis nuestro.)

Y el texto del Art. 26 derogado disponía en términos similares que:

"(a) . . . La Junta de Apelaciones celebrará una vista, con notificación a las partes interesadas, y deberá dictar su resolución dentro de los treinta (30) días siguientes a dicha vista. La Junta de Apelaciones podrá decretar cualquier orden, requerimiento, resolución o determinación que a su juicio deberá dictarse (1) por motivo de perjuicios ocasionados por circunstancias especiales, (2) por denegaciones viciosas para emitir los permisos necesarios, (3) por cualesquiera otras razones autorizadas en los reglamentos de la Junta de Planificación de Puerto Rico adoptados en virtud de las secs. 1 a 80 y 81 a 86 de este título, y a tal fin, la Junta tendrá los mismos poderes del funcionario u organismo de cuya sentencia se apela . . . ." 23 L.P.R.A. sec. 28.

Como puede verse, donde el anterior Art. 26 disponía que la notificación de la vista se hiciera a "las partes interesadas", ahora se provee específicamente que se notifique, además, a la Junta de Planificación y a A.R.P.E. La adición no tiene consecuencia práctica puesto que ambas son partes interesadas o afectadas; la Junta de Planificación porque es el organismo que formula y adopta los reglamentos de planificación, y A.R.P.E. porque es el organismo de cuya resolución se apela.

El anterior Art. 26(b) no hacía mención, como lo hace ahora expresamente el Art. 31(c) de la facultad de la Junta de Apelaciones para "recibir toda la prueba que resulte necesaria para adjudicar casos". El tribunal de instancia fundó su errada conclusión en este cambio aparente del texto que no tiene el alcance de alterar la función que siempre ha tenido la Junta de Apelaciones de recibir toda la prueba necesaria. A este respecto conviene examinar el historial legislativo.

El proyecto que originalmente se presentó a la Asamblea Legislativa, el P. de la C. 1271, que luego se convirtió en la Ley Orgánica de la Administración de Reglamentos y Permisos,

*supra*, en el Art. 31, inciso (c) disponía que la revisión ante la Junta de Apelaciones se limitaba a la prueba que tuvo ante sí el funcionario u organismo de cuya actuación se apelaba en aquellos casos en que se hubiere celebrado vista.([2]) La Junta de Apelaciones objetó esta limitación en su Memorial al Presidente de la Comisión del Desarrollo Socioeconómico y Planificación de la Cámara de Representantes por la razón de que establecía dos procedimientos distintos; uno, cuando el organismo recurrido no hubiere celebrado una vista pública, en cuyo caso la Junta de Apelaciones podía recibir toda la prueba que fuera pertinente a la controversia, y el otro, cuando se hubiese celebrado una vista pública, en cuyo caso la prueba estaría limitada a aquella que tuvo ante sí el funcionario con jurisdicción original. En vista de ello la Junta de Apelaciones recomendó a la referida comisión legislativa que se preservara su función revisora como lo era hasta el presente. Al respecto expresó: "Esta Junta de Apelaciones entiende recomendable que ésta continúe como hasta el presente, recibiendo toda la prueba disponible que ofrezcan las partes, en todos los casos, tanto aquellos en que se han celebrado vista pública ante la agencia apelada como aquellos en que ésta no ha sido celebrada la misma." *Id.* a la pág. 12. Es decir, la Junta de Apelaciones siempre ha recibido toda la prueba disponible y el nuevo texto del Art. 31, inciso (c), responde a esa realidad procesal a la que el texto derogado no hacía referencia por no considerarlo necesario. Nunca se cuestionó esa facultad hasta que se presentó en la Cámara de Representantes el P. de la C. 1271. No hay, pues, justificación válida para derivar del nuevo Art. 31(c) la intención de la Asamblea Legislativa de alterar en este aspecto la función revisora de la Junta de Apelaciones tal y como se había establecido en *Quevedo Segarra*.

---

([2])El texto del Art. 31(c) del P. de la C. 1271, disponía en lo pertinente:

"La Junta de Apelaciones tendrá los mismos poderes de, y limitará tal revisión a la prueba que tuvo ante sí, el funcionario u organismo de cuya actuación se apela, en aquellos casos en que éste haya celebrado vista, remitiendo copia de su determinación a la Junta de Planificación y a la Administración de Reglamentos y Permisos."

El error del tribunal de instancia, sin embargo, no invalida su sentencia confirmando la resolución de la Junta de Apelaciones que concedió la variación solicitada.

La Junta de Planificación impugna la sentencia recurrida por el fundamento de que la Junta de Apelaciones concedió en primera instancia una variación contrario a lo resuelto en *Quevedo Segarra.* Su contención es al efecto de que como el interesado José N. Colón nunca solicitó a A.R.P.E. una variación sino que fundó su solicitud para la segregación del lote de 945 metros cuadrados en que la reglamentación del Cañón de San Cristóbal no había entrado en vigor, por lo que la revisión ante la Junta de Apelaciones tenía que limitarse a este fundamento, y, que el considerar en revisión el caso como uno de variación constituía una actuación en primera instancia para lo cual no tenía facultad en ley.

El apuntamiento es inmeritorio. Recuérdese que la solicitud de segregación se presentó a A.R.P.E. en primera instancia y al ser denegada es que el interesado José N. Colón acude en revisión a la Junta de Apelaciones. Ésta ejerció su función revisora conforme a las disposiciones del mencionado Art. 31, inciso (c), el cual no sólo le confiere amplia facultad para decretar a nivel apelativo cualquier orden, requerimiento, resolución o determinación que a su juicio deba dictarse: 1) por motivo de perjuicios ocasionados por circunstancias especiales; 2) por denegaciones viciosas o, 3) por cualesquiera otras razones autorizadas en los reglamentos, sino que, además, reconoce expresamente a la Junta de Apelaciones, al igual que el anterior Art. 26, los mismos poderes del funcionario u organismo de cuya actuación se apela.

No tiene importancia el hecho de que la solicitud de segregación se presentara ante A.R.P.E. con un fundamento equivocado—la inaplicabilidad del reglamento de zonificación por no haber entrado en vigor—en vez de como propiamente una autorización de variación. La finca está ubicada en un distrito especial en que el reglamento vigente prohíbe la

segregación de menos de veinticinco cuerdas. La única forma pues en que A.R.P.E. podía considerar la solicitud de segregación era como una autorización de variación debido a circunstancias especiales. En el ejercicio de esa facultad discrecional A.R.P.E. venía obligada tanto a considerar la razonabilidad de la prohibición como la posibilidad de aliviar el perjuicio ocasionado por la aplicación literal del reglamento, independientemente del fundamento aducido por el interesado José N. Colón. Para ello celebró una vista y llevó a cabo una inspección ocular de la cual necesariamente habrían de surgir las circunstancias especiales que luego sirvieron de base a la Junta de Apelaciones para otorgar en la etapa apelativa la segregación solicitada. No obstante, A.R.P.E. limitó indebidamente el ejercicio de su discreción al fundamento aducido ante ella negando implícitamente un remedio que las circunstancias especiales del caso justificaba. Decimos que implícitamente porque en su resolución denegatoria A.R.P.E. expresó que desaprobaba la segregación "luego de considerar este caso *en todos sus méritos* y de una inspección efectuada sobre el terreno", lo que quiere decir que, en efecto, consideró todas las alternativas a que el interesado tenía derecho lo que necesariamente incluye una variación por no permitir el reglamento una segregación ordinaria. La actuación de la Junta de Apelaciones no fue otra cosa que la consideración del caso *en todos sus méritos,* al igual que lo había hecho A.R.P.E. en primera instancia, y la concesión de la variación, que es uno de los remedios a que el interesado tiene derecho de justificar su procedencia, está precisamente dentro de las facultades de la Junta de Apelaciones. A nuestro juicio los hechos presentados ante A.R.P.E. en primera instancia fueron suficientes para sostener la determinación de la Junta de Apelaciones. Reafirma nuestro juicio el hecho de que posteriormente A.R.P.E. autorizó la formación de cuatro solares con cabidas que fluctúan entre 500 y 1275 metros cuadrados en una finca cercana a la de José N. Colón y

que también está incluida en el mismo distrito de zonificación R-O(25).

La situación fáctica es pues completamente distinta a la de *Quevedo Segarra*. Allí la Junta de Planificación aprobó la concesión de una excepción al reglamento y la Junta de Apelaciones revocó finalmente porque la facultad de entender en primera instancia en la solicitud para la concesión de una variación o la autorización de excepción le correspondía a ella y no a la Junta de Planificación. Aquí la Junta de Apelaciones ejerció su facultad apelativa para revisar la intervención, que en primera instancia A.R.P.E. había ejercido. La actuación de la Junta de Apelaciones, por tanto, es enteramente consistente con lo resuelto en *Quevedo Segarra*.

*Se dictará sentencia conforme a las anteriores consideraciones.*

El Juez Asociado Señor Díaz Cruz emitió opinión disidente. El Juez Asociado Señor Negrón García no intervino.

—O—

Opinión disidente del Juez Asociado Señor Díaz Cruz.

La mayoría deja en precario la integridad de nuestro Derecho administrativo y para ello desautoriza hasta los precedentes sentados en jurisprudencia de este Tribunal.

Un peticionario de apellido Colón solicitó de la Administración de Reglamentos y Permisos (A.R.P.E.) la segregación de un solar de 945 m/c de una finca de mayor cabida radicada en el Barrio Honduras, de Barranquitas. Ante la agencia amplió el fundamento de su solicitud con la teoría de que no le aplica por ser posterior a su petición el reglamento de zonificación de esta zona que resulta ser la identificada como "Cañón de San Cristóbal", uno de los escasos remanentes de hermosura natural de nuestra tierra dignos de conservar en su belleza prístina. En resolución contenida en forma impresa, A.R.P.E. adjudicó la solicitud el 7 de octubre de 1976, así:

"[Impreso]   Luego de considerar este caso en todos sus méritos y de una inspección (¹) efectuada sobre el terreno se ha determinado lo siguiente:

[Insertado a máquina]   1—Que la finca objeto de lotificación ubica dentro del área que se identifica con el nombre de 'Cañón de San Cristóbal' y el mismo tiene un área ocupacional que se extiende dentro de los límites territoriales del Municipio de Aibonito y Barranquitas. Dicho cañón es una falla natural única, de origen volcánico, por donde discurre el Río Usabón que a la vez constituye el límite municipal de los municipios de Barranquitas y Aibonito. Este cañón se considera uno de gran valor cultural, ecológico, estético y científico, que puede ser disfrutado en forma controlada por la ciudadanía de manera que se mantenga al máximo su estado natural. Que en base a las condiciones de excelencia natural que distinguen a este cañón y a los fines de que se mantenga en su estado natural, la Junta de Planificación adoptó enmiendas a los mapas de zonificación de los municipios afectados por esta formación geológica de belleza excepcional y clasificó el área en un distrito para uso público (P) y un área especial dentro del Distrito R-O que se designó como Distrito R-O-25 en la periferia del mismo. (Resolución Z-43-I.) Así mismo se adoptaron las resoluciones JP-218, JP-219 y JP-219A, que establecen que en este nuevo Distrito (R-O-25) la cabida mínima para la creación de nuevas fincas será de 25.00 cuerdas y los usos y fincas de cabidas menores ya existentes en el sector se ajustarán a las disposiciones de la resolución JP-219A aprobada por la Junta de Planificación en 14 de enero de 1976.

2—Que en el caso que nos ocupa no se cumple con las disposiciones de las normas adoptadas para el sector del Cañón de San Cristóbal. [Impreso]   Considerando lo anteriormente expuesto y en virtud de la Orden Administrativa ARPE Núm. 3 de 15 de agosto de 1975, emitida al amparo de la Ley Núm. 76 de 24 de junio de 1975, DESAPRUEBA la antes referida lotificación radicada bajo el Caso Número 76-41 G-292 BPL.

Cualquier parte interesada en este caso puede radicar una apelación ante la Junta de Apelaciones Sobre Construcciones y Lotificaciones en un Período no menor de treinta (30) días a partir de la fecha de este informe."

A.R.P.E. no formuló determinaciones de hecho a pesar de

---

(¹)Nótese que la consideración "en los méritos" y la "inspección" son meras expresiones formularias, lugares comunes del *impreso*, en el vacío de la falta de determinaciones.

que el Art. 9 de su ley orgánica la instruye a "celebrar una audiencia pública" y a "formular por escrito los fundamentos"(²) por qué deniega la autorización de un proyecto, copia del cual deberá incluirse en la notificación de la determinación que se haga a la parte peticionaria. No hay modo de descubrir si A.R.P.E. celebró vista, ni qué prueba tuviera ante su consideración. Ahogada por el laconismo formulista, no hay constancia de que la agencia cumpliera el mandato de ley.

En 5 mayo, 1977 la Junta de Apelaciones sobre Construcciones y Lotificaciones, dentro de esta total obscuridad de cuáles fueron los fundamentos de decisión de A.R.P.E., asume jurisdicción(³) y declara el caso como de "circunstancias especialísimas" y procede a estimar la petición a base de lo que "surge de los autos del caso" sin que tampoco aparezca

---

(²)Art. 9(b)—"Cuando cualquier sector, dentro de cuyos límites se hubiere solicitado autorización para algún proyecto de lotificación simple, o un permiso de construcción o uso, presentare características tan especiales que hicieren impracticables la aplicación de las disposiciones reglamentarias que rijan para esa zona, e indeseable la aprobación del proyecto, debido a factores tales como salud, seguridad, orden, defensa, economía, concentración de población, ausencia de facilidades o mejoras públicas, uso más adecuado de las tierras, o condiciones ambientales, estéticas o de belleza excepcional, la Administración podrá, en la protección del bienestar general y tomando en consideración dichos factores, así como las recomendaciones de los organismos gubernamentales concernidos, denegar la autorización para tal proyecto o permiso. *En el ejercicio de esta facultad, la Administración deberá tomar las medidas necesarias para que la misma no se utilice con el propósito o el resultado de obviar las disposiciones reglamentarias en casos en que no medien circunstancias verdaderamente especiales.* En estos casos, la Administración deberá celebrar una audiencia pública, siguiendo el procedimiento que este Capítulo provee, antes de decidir sobre el proyecto sometido o permiso solicitado. La Administración denegará tal solicitud mientras existan las condiciones desfavorables al proyecto o permiso, aunque el proyecto en cuestión esté comprendido dentro de los permitidos para el área por los Reglamentos de Planificación en vigor.

"La Administración deberá formular por escrito los fundamentos por qué deniega la autorización de un proyecto, copia del cual deberá incluirse en la notificación de la determinación que se haga a la parte peticionaria." 23 L.P.R.A. sec. 71(h)(b). (Énfasis suplido.)

(³)La opinión acoge el erróneo argumento de la Junta de Apelaciones para evadir la doctrina de *Quevedo Segarra*, infra, que dicho organismo expone así:

"... [L]a situación del caso que nos ocupa es claramente distinguible de la que concurría en el caso de *Quevedo Segarra* antes citado, ya que es patente que la actuación que motiva la presente apelación no llega a esta Junta de Apelaciones por

que haya recibido prueba. Se encamina entonces la Junta dentro de este estado de tiniebla procesal a adoptar como sus propias conclusiones, las siguientes:

"Surge de los autos del caso que el apelante de epígrafe es propietario de una finca de 41.375 cuerdas ubicada en el Barrio Honduras de Barranquitas. De la misma interesa segregar un solar con cabida superficial de 905.465 metros cuadrados. El mismo se encuentra actualmente vacante y colinda por uno de sus laterales con otros solares que fueron segregados de la finca principal en los cuales existen viviendas. El predio a segregarse, al igual que los dos antes descritos tienen acceso a una carretera municipal, que los separa de la finca principal. En el sector existen facilidades de energía eléctrica y agua que pueden ser extendidas para servir dicha propiedad y el apelante está dispuesto a hacer las obras necesarias. La segregación en cuestión cuenta con el endoso del gobierno municipal del municipio de Barranquitas donde ubica la propiedad. Dicha segregación es sustancialmente conforme a las disposiciones del Reglamento para Lotificaciones Simples.

.   .   .   .   .   .   .   .

... [C]oncurren aquí circunstancias especialísimas, que deben movernos a autorizar la lotificación solicitada. En particular entendemos que la lotificación que nos ocupa ubica en un sector donde existe ya un desarrollo urbano lejano al área propia del Cañón de San Cristóbal, por lo cual esta segregación no habrá de afectar sustancialmente las características esenciales del sector. De otra parte dicho solar se encuentra segregado de hecho sobre el terreno y tiene acceso por una carretera municipal y constituye un desarrollo que cuenta con las facilidades públicas esenciales y es conforme a las disposiciones del Reglamento para Lotificaciones Simples."

Luego el 2 diciembre, 1977 la Junta de Apelaciones emitió resolución a moción de reconsideración de la Junta de Planificación donde habla de prueba recibida en dicha etapa y añade las siguientes determinaciones a las reseñadas anteriormente:

---

vía de la radicación ante esta Junta de un caso en primera instancia y sí mediante un recurso apelativo."

El Tribunal de Apelación necesariamente ha de conocer los fundamentos de decisión para poder resolver si está correcta o equivocada. *United States* v. *Chicago, M., St P. & P.R. Co.*, 294 U.S. 499 (Cardozo, J.).

"La prueba recibida por vía de reconsideración sirvió para reafirmar lo antes señalado y además aportó el hecho adicional de que la Oficina Regional de la Administración de Reglamentos y Permisos en Bayamón en el Caso 76-41-G-180 BPL resuelto el 17 de enero de 1977 autorizó la formación de cuatro (4) solares con cabidas que fluctúan entre 500.00 y 1,275.4543 metros cuadrados en una finca cercana a la que nos ocupa que como se señala en la determinación aludida está incluida en el mismo distrito de zonificación residencial R-O (25) en que ubica la finca del apelante. En adición se trajo testimonio a los efectos de que la finca que nos ocupa está separada del área del 'Cañón San Cristóbal' por dos vías públicas existentes, que constituyen una barrera física hacia ese sector.

De otra parte, el testimonio recibido puso de manifiesto la necesidad de una posible revaluación por la Junta de Planificación de las áreas que fueron incluidas en la referida zonificación restrictiva y que por lo pronto existe la necesidad de que los casos en esa área se vean cada uno por sus méritos particulares."

Los que menciona la precedente decisión de la Junta de Apelaciones son los elementos críticos, determinantes de circunstancia especialísima que podrían justificar la variación o excepción a los reglamentos, y sobre los cuales en el curso administrativo legislado debió pasar A.R.P.E. antes de que la Junta de Apelación pudiese intervenir. Al analizar el nuevo diseño legislativo que gobierna la planificación en Puerto Rico, resolvimos en *The Richards Group* v. *Junta de Planificación*, 108 D.P.R. 23 (1978), que corresponde a A.R.P.E. ocuparse de las funciones operacionales que antes ejercía la Junta de Planificación y velar por el cumplimiento de las leyes y reglamentos de planificación. Aun cuando la ley orgánica de la agencia no dispusiera específicamente sobre la formulación de determinaciones de hecho, éstas se consideran indispensables para que pueda cumplirse "responsablemente" la función judicial de revisión. *Hilton Hotels* v. *Junta de Salario Mínimo*, 74 D.P.R. 670, 683 (1953). Confrontados con la indebida aceptación por la Junta de Apelaciones del Sistema de Administración de Personal de un recurso en que

la ley no le confería jurisdicción, afirmamos en *Pou Estape* v. *F.S.E.*, 108 D.P.R. 336 (1978), lo siguiente:

"Todos los funcionarios y los empleados públicos desde los más encumbrados hasta los menos poderosos tienen plena e incuestionable facultad para ejercer los poderes y deberes que les confieren la Constitución y las leyes, pero asimismo no pueden arrogarse motu proprio, sin autoridad clara de ley, poderes y facultades que no les han sido así conferidas. Esta premisa mayor es un *sine qua non* del sistema de gobierno en el cual prevalece el imperio de la ley, en contraste con los sistemas en los cuales impera el arbitrio arbitrario de los regímenes dictatoriales."

En *Quevedo Segarra* v. *J.A.C.L.*, 102 D.P.R. 87, 92 (1974), rechazamos la proposición de que la Junta de Apelaciones sobre Construcciones y Lotificaciones estuviese por ley investida de facultad para otorgar variaciones y excepciones.[4] Allí dijimos: "No es correcto. El estudio que hemos hecho de la cuestión demuestra que nunca se ha conferido directamente a la Junta de Apelaciones jurisdicción en primera instancia para otorgar variaciones y excepciones. Pero más aún, la naturaleza y alcance de estos conceptos dentro del régimen establecido por la Ley de Planificación y el Reglamento de Zonificación para controlar y dirigir el desarrollo urbano en forma integral con un mínimo de fricción y de conflicto, demuestran que propiamente corresponde a la Junta de Planificación entender en primera instancia en la concesión de variaciones y excepciones."

El fundamento legislativo para conferir a la Junta de Apelaciones "una función exclusivamente revisora" (*Quevedo*, supra, a la pág. 95), se consignó así en *Quevedo Segarra*:

"En la concesión de variaciones y excepciones entran en juego factores técnicos y complejos, cuya evaluación requiere estudios y conocimientos especializados. Como bien se señala en el alegato de

---

[4]"Variación" es permiso para dedicar la propiedad a un uso *prohibido* por las restricciones ordenadas para una zona o distrito; "excepción" es la autorización para usar la propiedad de manera particular que el Reglamento permite si se dan y cumplen determinadas condiciones. *López* v. *Junta de Planificación*, 80 D.P.R. 646, 654 (1958).

la recurrida, la Junta de Planificación cuenta con el personal profesional y los recursos técnicos necesarios para llevar a cabo esta evaluación. Es de notar la tajante diferencia en los recursos presupuestarios y de personal entre ambos organismos. La Junta de Planificación cuenta con un presupuesto conjunto de $11,605,075, mientras que el presupuesto de la Junta de Apelaciones asciende a $267,353." *Presupuesto 1973*, págs. 210 y 184. La Junta de Planificación cuenta con más de 150 ingenieros, 57 técnicos de planificación, 6 planificadores regionales, 16 planificadores de renovación urbana, 9 especialistas de planificación, 3 agrimensores y un agrónomo.

El personal técnico de la Junta de Apelaciones se limita a tres ingenieros y un agrimensor. Relación de Puestos Regulares, *Presupuesto 1973*, pág. 165.

Por otro lado, la Junta de Planificación lleva a cabo estudios sobre el crecimiento poblacional y urbano, y de otra índole, a fin de reglamentar el uso de terrenos y promover un desarrollo urbano ordenado. *Presupuesto 1973*, pág. 210. En virtud de los recursos a su disposición y de los estudios que lleva a cabo, la Junta de Planificación tiene una perspectiva integral y abarcadora de la problemática urbana que le permite entender con mayor efectividad en casos de variaciones y excepciones en primera instancia." (Énfasis en el original.)

Sin que haya variado la jurisdicción y competencia de la Junta de Apelaciones por la ley orgánica de A.R.P.E. (Núm. 76 de 24 junio, 1975 (Art. 31(c)—23 L.P.R.A. sec. 72c(c)) como correctamente sostiene la opinión mayoritaria, el aquí interesado José N. Colón obtuvo de la Junta de Apelaciones en primera instancia una autorización de variación para un área de tan sensitiva ecología como lo es el "Cañón de San Cristóbal", entre Aibonito y Barranquitas.

El procedimiento ante A.R.P.E., desconocido por la Junta de Apelaciones por la falta de determinaciones de hecho, impedía el ejercicio de su jurisdicción revisora. Sin poder ni autorización la Junta se constituyó en foro de primera instancia y resolvió el caso como uno que en sus méritos justificaba la variación, o sea, echar a un lado el uso

prohibido.(5) No puede darse actuación administrativa más antagónica con lo resuelto en *Quevedo Segarra,* supra, y los demás precedentes aquí citados.

En ausencia de determinaciones de hecho, de la frase formularia "considerada en sus méritos" en la decisión de A.R.P.E. no puede inferirse que la agencia conoció del caso en su fondo con todos los recursos técnicos a su disposición y sí, que su decisión está limitada a los méritos del planteamiento sobre ausencia de reglamentación. El propio recurso de la agencia contra la actuación en primera instancia de la Junta de Apelaciones necesariamente impugna y niega que A.R.P.E. haya entrado en o adjudicado los méritos de una solicitud de variación. En materia de adjudicación en los méritos no hay substituto para el pliego de determinaciones de hecho, única fuente de la que pueda aseverarse que el tribunal o la agencia con jurisdicción primaria penetró a considerar la justicia esencial del caso, y que ejerció su sano arbitrio en la valoración de la cuestión justiciable.

La opinión exhibe una críptica intención de extender al proceso administrativo la norma de la Regla 70 de Procedimiento Civil que permite al tribunal conceder remedio por sobre defecto en la súplica del mismo o en la denominación del pleito, más las limitaciones legales y funcionales de la Junta de Apelación completan un cuadro de ineptitud institucional para conceder esta variación en primera instancia. El peticionario debe iniciar el procedimiento con una solicitud de variación, y no con alegación de exclusión de Reglamento ante A.R.P.E. y ésta al decidir deberá hacer determinaciones de hecho que en caso de apelación faciliten la función revisora. No hay razón para que revoquemos a *Quevedo Segarra,* ni a *Pou Estape,* ni a *Richards Group,* ni a *Hilton Hotels,* supra, que es consecuencia última de la decisión hoy tomada por el Tribunal.

---

(5)Sin beneficio de determinaciones de hecho de la agencia, la Junta de Apelaciones hizo sus propias determinaciones (Ap. pág. 4 y ss.) abrogándose la jurisdicción primaria de A.R.P.E.

La flexibilidad que no puede ser referida a un principio o precepto jurídico, hiere de muerte la actuación del organismo administrativo. La Junta de Apelaciones puede hacer solamente lo que el Derecho le permite, esto es, lo que cae dentro de su competencia. "Los órganos que integran la Administración y la competencia misma de esos órganos son y existen, en suma, en tanto se instituyen por el orden jurídico, no como un *facto* natural desligado del Derecho." *Nueva Enciclopedia Jurídica*, Carlos E. Mascareñas, Director, Ed. Seix (1950), T. 1, pág. 63. La previa existencia de un precepto legal que lo permita es la ineludible génesis de licitud del acto administrativo. La discreción o el arbitrio que es el terreno de la *flexibilidad* no se fundan en la ausencia de precepto jurídico, sino en la atribución por el Derecho de una libertad de apreciación. La falta de competencia y de condición en la Junta para ejercitar su jurisdicción apelativa no se suple con libertad de apreciación. "Si un acto que pretende presentarse como administrativo no puede ser legitimado por un precepto jurídico que lo prevea y lo admita, no puede ser aceptado como lícito acto administrativo." *Op. cit.* pág. 64. *Cf. Pou Estape*, supra.

No hay orden sin seguridad jurídica.

La sentencia del Tribunal Superior, que sostuvo a la Junta de Apelaciones sobre Construcciones y Lotificaciones, bajo la equivocada premisa de que la nueva legislación le concede facultad para conocer de y proveer en primera instancia a solicitudes de variación y excepción a reglamentos, y la propia resolución de la Junta de Apelaciones, deberán ser revocadas.